**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: KEYBANK DATA BREACH LITIGATION** | **MDL NO. _____** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFFS KAREN MARTIN AND MICHAEL MARTIN FOR TRANSFER AND CENTRALIZATION IN THE WESTERN DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. §1407**

## TABLE OF CONTENTS

I.    BACKGROUND ............................................................................................................ 3

II.    ARGUMENT ................................................................................................................. 4

A.    The Related Actions and Any Tag-Along Actions Are Appropriate for Transfer and Coordination Pursuant 28 U.S.C. §1407 ............................................................... 4

    1.    The Related Actions Involve One or More Common Questions of Fact ...................... 5

    2.    Transfer and Coordination of the Related Actions to the Western District of Pennsylvania Will Further the Convenience of the Parties and Witnesses ...................... 6

    3.    Coordination Will Promote the Just and Efficient Conduct of the Related Actions ........ 8

    4.    Centralization Under §1407 Is Appropriate Given the Number of Related Actions and District Courts at Issue ............................................................................ 10

B.    The Western District of Pennsylvania Is Well-Suited, Efficient, and a Convenient Venue for the Constituent Cases ............................................................................... 10

C.    Docket Conditions Warrant Centralization in the Western District of Pennsylvania ........ 12

III.    CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
  214 F. Supp. 3d 1357 (J.P.M.L. 2016)......................................................................6

*In re Airline Baggage Fee Antitrust Litig.*,
  655 F. Supp. 2d 1362 (J.P.M.L. 2009)....................................................................10

*In re All-Clad Metalcrafters, LLC, Cookware Mktg. & Sales Pracs. Litig.*,
  532 F. Supp. 3d 1411 (J.P.M.L. 2021)....................................................................12

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
  410 F. Supp. 3d 1350 (J.P.M.L. 2019)..................................................................2, 9

*In re Anthem, Inc. Customer Data Sec. Breach Litig.*,
  109 F. Supp. 3d 1364 (J.P.M.L. 2015)....................................................................11

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
  626 F. Supp. 2d 1348 (J.P.M.L. 2009)......................................................................6

*In re Diisocyanates Antitrust Litig.*,
  341 F. Supp. 3d 1376 (J.P.M.L. 2018)....................................................................11

*In re Enfamil Lipil Mktg. & Sales Pracs. Litig.*,
  764 F. Supp. 2d 1356 (J.P.M.L. 2011)..................................................................8, 9

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
  289 F. Supp. 3d 1322 (J.P.M.L. 2017)......................................................................7

*In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*,
  509 F. Supp. 3d 1370 (J.P.M.L. 2020)....................................................................12

*In re First Nat. Collection Bureau, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
  11 F. Supp. 3d 1353 (J.P.M.L. 2014)........................................................................8

*In re Lending Tree, LLC, Customer Data Sec. Breach Litig.*,
  581 F. Supp. 2d 1367 (J.P.M.L. 2008)....................................................................14

*In re LLRice 601 Contamination Litig.*,
  466 F. Supp. 2d 1351 (J.P.M.L. 2006)..................................................................8, 9

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales
  Pracs. & Prods. Liab. Litig.*,
  109 F. Supp. 3d 1382 (J.P.M.L. 2015)......................................................................9

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    363 F. Supp. 3d 1372 (J.P.M.L. 2019)......................................................................6

*In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    No. MDL 3021, 2022 WL 303561 (J.P.M.L. Feb. 2, 2022) ....................................12

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    276 F. Supp. 3d 1382 (J.P.M.L. 2017)....................................................................11

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    831 F. Supp. 2d 1371 (J.P.M.L. 2011)....................................................................11

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
    304 F. Supp. 3d 1351 (J.P.M.L. 2018)..................................................................6, 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    223 F. Supp. 3d 1353 (J.P.M.L. 2016)......................................................................6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    572 F. Supp. 2d 1380 (J.P.M.L. 2008)......................................................................8

**Statutes, Rules, and Regulations**

28 U.S.C.
    §1404...........................................................................................................................3
    §1404(a)....................................................................................................................10
    §1407................................................................................................................ *passim*
    §1407(a)...............................................................................................................4, 5, 8

Rules & Procedures of the Judicial Panel on Multidistrict Litigation
    Rule 6.2 .....................................................................................................................1

**Other Authorities**

Manual for Complex Litigation,
    §20.131 (4th ed. 2004) ....................................................................................4, 5, 6

United States Courts, *Cases Transferred by Order of the Judicial Panel on
    Multidistrict Litigation, Cumulative from September 1968 Through September
    30, 2021 (Caseload Statistics Data Tables)* ..........................................................12

United States Courts, *U.S. District Courts – National Judicial Caseload Profile
    (Combined Civil and Criminal Federal Court Management Statistics)* ..................12

Pursuant to 28 U.S.C. §1407 and J.P.M.L Rule 6.2, Plaintiffs Karen Martin and Michael Martin ("Plaintiffs" or "Movants"), who filed *Martin v. KeyBank National Association*, No. 2:22-cv-01346 (W.D. Pa.), through their counsel Scott+Scott Attorneys at Law LLP, respectfully move the Judicial Panel on Multidistrict Litigation for an Order transferring the six actions listed in the Schedule of Actions (collectively, the "Related Actions"), as well as any tag-along cases subsequently filed, to the United States District Court for the Western District of Pennsylvania for coordinated or consolidated pretrial proceedings before the Honorable Judge Robert J. Colville, before whom one of the six Related Actions is currently pending.

## INTRODUCTION AND COMMON FACTUAL BACKGROUND

All of the Related Actions subject to this motion arise from one nucleus of operative facts: a data breach suffered by KeyBank National Association ("KeyBank"), KeyCorp (together with KeyBank, "Key"), and Overby-Seawell Company ("OSC") (collectively, "Defendants").

Specifically, on July 26, 2022, KeyBank notified its clients that on July 5, 2022, an "unauthorized external party" had gained remote access to OSC's network (the "KeyBank Data Breach") and, acquired certain information from a number of OSC clients, including certain personal information of KeyBank clients, including: names, mortgage property addresses, mortgage account numbers and mortgage account information, phone numbers, property information, the first eight digits of Social Security numbers, and home insurance policy number and home insurance information belonging to Plaintiffs and class members (collectively, "PII"). Plaintiffs allege that KeyBank, KeyCorp, and OSC failed to properly protect their and class members' PII resulting in harm to Plaintiffs and class members who now face a substantial and imminent risk of identity theft and fraud as a result of the KeyBank Data Breach.

Defendant KeyBank is a National Association organized under the laws of the United States with a principal place of business in Cleveland, Ohio. Among other things, KeyBank originates, sells, and services commercial and residential mortgage loans. Defendant KeyCorp is a publicly traded company incorporated in Ohio with a principal place of business in Cleveland, Ohio. KeyCorp is the parent holding company for KeyBank, its principal subsidiary, through which most of KeyCorp's banking services are provided. KeyBank operates in 15 states, with numerous branches located throughout Pennsylvania, including 15 locations in the Pittsburgh, Pennsylvania area. Defendant OSC is incorporated in Georgia with a principal place of business in Kennesaw, Georgia. OSC is a technology services vendor for KeyBank that provides ongoing verification regarding KeyBank's residential mortgage clients' maintenance of property insurance.

Six Related Actions are currently pending against Defendants. Three Actions were filed in the Northern District of Georgia, two in the Northern District of Ohio, and one in the Western District of Pennsylvania. Each of the Related Actions was filed as a putative class action on behalf of overlapping classes of customers whose PII were compromised by the KeyBank Data Breach. The Related Actions are all based on several common questions of fact and law. Thus, there is a compelling need to establish uniform and consistent standards in conducting pretrial discovery and motion practice, and to avoid potentially inconsistent rulings, inefficiencies, and waste of the parties' and judicial resources that would result if the Related Actions were allowed to proceed in numerous district courts. This is the sort of case that this Panel has routinely consolidated. This Panel has previously recognized that centralization was proper where, like here, there are multiple defendants entwined in a large data breach. *See In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (ordering transfer and

centralization, recognizing that "a single, multi-defendant MDL" is "necessary to ensure the just and efficient conduct of this litigation").

Given that there is no singular center of gravity, with KeyBank located in Ohio and OSC located in Georgia, Plaintiffs contend that the most logical and convenient location for these proceedings would be a centrally located venue such as the Western District of Pennsylvania, where KeyBank maintains a significant presence and where one of the six Related Actions is pending. Additionally, as discussed below, the Western District of Pennsylvania is equipped with both the resources and favorable docket conditions, which renders it as the most appropriate forum.

## I.     __BACKGROUND__

This motion for transfer involves six Related Actions pending in three different federal district courts. As of this filing, there are three Actions pending in the Northern District of Georgia, two Actions pending in the Northern District of Ohio, and one Action pending in the Western District of Pennsylvania.

Prior to filing this motion, Plaintiffs conferred with counsel for the six Related Actions to discuss whether alternatives to centralization, including seeking §1404 transfer to one district court, and information coordination could be accomplished. Counsel for the six Related Actions could not agree to transfer all Related Actions to one district court, and could not agree to information coordination of the cases given the overlapping claims and classes.

Based on the scope of the KeyBank Data Breach, the number of potential impacted customers consists of many thousands, if not millions of individuals. Moreover, due to the extensive press coverage thus far, undersigned Plaintiffs anticipate that additional class actions will soon commence in other federal courts alleging similar claims on behalf of similar classes.

## II.  <u>ARGUMENT</u>

The Panel may order transfer and coordination if civil actions pending in different districts "involv[e] one or more common questions of fact" and transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. §1407(a).  "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."  MANUAL FOR COMPLEX LITIGATION, §20.131, at 220 (4th ed. 2004).  Because allowing the Related Actions to proceed independently would almost guarantee duplication of discovery, overlapping efforts, and risk inconsistent rulings, transfer and coordination for pretrial proceedings is necessary and appropriate.  The Related Actions all involve common issues of fact – a massive data breach – centralization of which will promote the convenience of the parties and witnesses and the just and efficient conduct of the litigation.  *See* 28 U.S.C. §1407.  Transfer and centralization will mitigate the possibility of inconsistent rulings, including rulings regarding class certification, and will promote the judicial economy by providing a single forum to which future filed tag-along actions can be transferred.

Here, each of the Related Actions name KeyBank, KeyCorp, or OSC as the primary defendant.  Each of the Related Actions contain similar causes of action, including claims for negligence, negligence *per se*, breach of contract or implied contract, and actions seeking declaratory judgment which warrants centralization pursuant to 28 U.S.C. §1407.

### A.    **The Related Actions and Any Tag-Along Actions Are Appropriate for Transfer and Coordination Pursuant 28 U.S.C. §1407**

Transfer and coordination are permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct

4

of such actions."  28 U.S.C. §1407(a).  "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."  MANUAL FOR COMPLEX LITIGATION, §20.131, at 220.  Transfer and coordination for pretrial proceedings would achieve those objectives in the Related Actions and is therefore appropriate here.

> **1.**      **The Related Actions Involve One or More Common Questions of Fact**

Transfer and coordination are appropriate here as the Related Actions are based upon the same facts concerning the KeyBank Data Breach.  The factual questions common to the Related Actions include, but are not limited to:

 i.  whether Defendants owed a duty to Plaintiffs and other similarly situated class members to protect PII;

 ii.  whether Defendants failed to provide reasonable security to protect PII;

 iii.  whether Defendants negligently or otherwise improperly allowed PII to be accessed by third parties;

 iv.  whether Defendants failed to adequately notify Plaintiffs and similarly situated class members that its data systems were breached;

 v.  whether Plaintiffs and similarly situated class members suffered legally cognizable damages as a result of the KeyBank Data Breach, and, if so, in what amount; and

 vi.  whether Plaintiff and class members are entitled to declaratory judgement.

Additionally, all Related Actions rely upon similar legal theories of recovery, each turning on the failure of Defendants to prevent the KeyBank Data Breach.  As the Panel has consistently recognized, centralization is appropriate in the context of data breach actions because where "all actions stem from the same data breach," discovery across all actions will address exactly these questions, including "how and when [the breach] was identified, what security measures

[defendant] had in place for securing patient data, and what steps it took after discovery of the breach." *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("Common factual questions are presented with respect to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) ("Common factual questions are presented with respect to Yahoo's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."). Given the substantial factual overlap across the Related Actions, centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.

> **2.    Transfer and Coordination of the Related Actions to the Western District of Pennsylvania Will Further the Convenience of the Parties and Witnesses**

Centralization under 28 U.S.C. §1407 is proper when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 626 F. Supp. 2d 1348 (J.P.M.L. 2009). Centralization is appropriate where, as here, it will "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION, §20.131, at 220.

KeyBank and each co-defendant will likely raise the same discovery objections and seek the same protective orders or privileges in each respective case.  Absent centralization and transfer, all parties will be subjected to duplicative discovery, and witnesses will face multiple, redundant depositions.  *See, e.g.*, *Uber*, 304 F. Supp. 3d at 1353 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

Absent transfer, the federal court system will be forced to administer – and KeyBank (and their co-defendants) will be compelled to defend – at least six Related Actions asserting overlapping class actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements. Moreover, each Plaintiff will be required to monitor and possibly participate in each of the other similar Related Actions to ensure that KeyBank and co-defendants do not provide inconsistent or misleading information.  Many of the same pretrial disputes are likely to arise in each Action. Likewise, due to the similar causes of action in each complaint, the defenses asserted in the Related Actions will be substantially the same, as will the substance of any motions to dismiss and motions for summary judgment, which will be based on the same claims and based on the same arguments in each Action.  None of the pending cases have progressed to the point where efficiencies will be forfeited through transfer to an MDL proceeding – each Action is in its infancy.

While undersigned counsel anticipates there will be additional case filings, the current level of litigation – six Related Actions in three separate District Courts – would benefit from transfer and coordinated proceedings, given the allegations of these complaints.  *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1324 (J.P.M.L. 2017) (finding that "centralization under Section 1407 . . . will serve the convenience of the parties and witnesses and

promote the just and efficient conduct of this litigation"); *see also In re First Nat. Collection Bureau, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("[E]fficiencies can be gained from having these actions proceed in a single district," such as "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 572 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008) (granting transfer and consolidation of three cases and six potential tag-alongs because of the "overlapping and, often, nearly identical factual allegations that will likely require duplicative discovery and motion practice").

In sum, transfer and coordination of the Related Actions to a single federal district will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts.  This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of all litigations, third parties, and the courts.  *See In re Enfamil Lipil Mktg. & Sales Pracs. Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).

### 3.    Coordination Will Promote the Just and Efficient Conduct of the Related Actions

Centralization will "promote the just and efficient conduct of [the] actions" because the Related Actions will likely involve many of the same pretrial issues concerning the nature and scope of discovery and the sufficiency of plaintiffs' allegations.  *See* 28 U.S.C. §1407(a). Discovery will be more effectively and efficiently managed, while the resources of the parties, attorneys, and judicial system are conserved.  Coordination is therefore necessary to prevent inconsistent pretrial rulings on many central issues, which would present substantial problems because of the consistency in factual and legal allegations between the Related Actions.  *See In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006).

Centralization is necessary to prevent inconsistent pretrial rulings on many central issues, which would present significant problems due to the substantial consistency in factual and legal allegations among all Related Actions. *Id*. (observing that centralization would "prevent inconsistent pretrial rulings" on class certification and other issues). The prospect of inconsistent rulings also encourages forum and judge shopping (including, for example, manipulation of non-congruent discovery limits, approaches to electronically stored information, and protective order issues). By contrast, a single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all of these federal cases at once will help reduce witness inconvenience, the cumulative burden on the courts, and the litigation's overall expense, as well as minimizing this potential for conflicting rulings. *Id*. Centralization will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. *Am. Med. Collection Agency, Inc.*, 410 F. Supp. 3d at 1353 ("[A] single MDL encompassing [multiple defendants] is necessary to ensure the just and efficient conduct of this litigation."). This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of litigants, third parties, and the courts. *See id*. at 1354 ("centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation"); *Enfamil*, 764 F. Supp. 2d at 1357 ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses."); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) ("Centralization will . . . conserve the resources of the parties, their counsel and the judiciary.").

### 4.      Centralization Under §1407 Is Appropriate Given the Number of Related Actions and District Courts at Issue

Centralization is particularly appropriate given the number of Related Actions pending in three federal district courts.  Although Plaintiff does not know whether or how many additional actions will be filed, given the number of Related Actions and the number of differing federal district courts, §1407 transfer is a useful and appropriate way to get in front of subsequent tag-along actions.  *See In re Airline Baggage Fee Antitrust Litig.*, 655 F. Supp. 2d 1362, 1363 (J.P.M.L. 2009) ("In light of the very large number of individuals affected by the fees in question, the possibility of additional actions arising in other districts (with ensuing duplicative Section 1404(a) motion practice) looms.").

### B.      The Western District of Pennsylvania Is Well-Suited, Efficient, and a Convenient Venue for the Constituent Cases

Two of the Panel's weightiest considerations in deciding on an appropriate transferee district are: (1) the district's central location to the parties, witnesses, documents and counsel, and (2) ease of accessibility.  Both of these factors strongly militate in favor of transfer to the Western District of Pennsylvania.

The selection of a geographically central location is of paramount importance in cases, such as here, where the litigation is nationwide in scope and where there is no singular center of gravity.  Plaintiffs in the Related Actions are located throughout the United States.  Discovery of the putative class representatives and third parties will take place across the United States, and will not be concentrated in a single district.  Defendant KeyBank is located in Cleveland, Ohio, with offices and branches located throughout the United States.  OSC is located in Kennesaw, Georgia.  Thus, documents and witnesses are most likely going to be located in numerous geographic locations.

Transfer to the Western District of Pennsylvania, a central meeting point for these geographically dispersed parties will promote the just and efficient conduct of these Related Actions.  The Western District of Pennsylvania is similarly centrally located to counsel for Plaintiffs and Defendants in the Related Actions.  *See In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018) (finding transfer to the Western District of Pennsylvania appropriate where one defendant was located in Pennsylvania and five other defendants had their headquarters adjacent or nearby); *In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1372 (J.P.M.L. 2011) (finding that "[g]iven the wide dispersal of these actions across the country, no forum stands out as a focal point for [the] litigation," and that the appropriate transferee district was the one where the "documents and witnesses likely are located" and was "a convenient and accessible forum for most parties"); *In re Anthem, Inc. Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364 (J.P.M.L. 2015) (declining to centralize related data breach actions in the Southern District of Indiana, where the company was headquartered, despite that it was the transferee district sought by the majority of plaintiffs and the defendant, and citing the nationwide scope of the litigation, transferring the actions to the Northern District of California, which the Panel concluded was conveniently located and had the resources to manage the litigation).

Thus, given that there is no clear center of gravity in or nexus to one district the Panel should centralize the Related Actions in the Western District of Pennsylvania which consider a centrally located and appropriate transferee jurisdiction.  *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017) (where the Northern District of Ohio was selected as transferee district because they were a centrally located and easily accessible location despite other Districts having more pending actions).

11

Furthermore, the Panel has repeatedly recognized the Western District of Pennsylvania as having the necessary resources to handle the coordinated litigation of complex actions. *See In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. MDL 3021, 2022 WL 303561 (J.P.M.L. Feb. 2, 2022); *In re All-Clad Metalcrafters, LLC, Cookware Mktg. & Sales Pracs. Litig.*, 532 F. Supp. 3d 1411 (J.P.M.L. 2021); *In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*, 509 F. Supp. 3d 1370 (J.P.M.L. 2020).

With respect to the first factor, there is nearly an even distribution geographically across the three jurisdictions and there is otherwise no center of gravity.

### C.   Docket Conditions Warrant Centralization in the Western District of Pennsylvania

As of the date of this filing, docket conditions in the Western District of Pennsylvania are more favorable than other potential transferee districts – the Northern District of Ohio and Northern District of Georgia.  Specifically, in the 12 months preceding September 30, 2021, the Western District of Pennsylvania had 26 cases transferred into its district; the Northern District of Georgia had 288 cases transferred into its district; the Northern District of Ohio had 84 cases transferred into its district.[1]  Additionally, the time from filing to disposition of cases in the Western District of Pennsylvania is more favorable than those in the Northern District of Ohio or Northern District of Georgia.[2]  Indeed, the following tables sets forth the number of filings, the median time from filing to disposition, and median time from filing to trial:

---

[1]     *Cases Transferred by Order of the Judicial Panel on Multidistrict Litigation, Cumulative from September 1968 Through September 30, 2021 (Caseload Statistics Data Tables)*, United States Courts, https://www.uscourts.gov/sites/default/files/data_tables/jb_s19_0930.2021.pdf (last viewed September 27, 2022).

[2]     *U.S. District Courts – National Judicial Caseload Profile (Combined Civil and Criminal Federal Court Management Statistics)*, United States Courts, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last viewed September 27, 2022).

**Table 1** - (Georgia Northern, US District Court – Judicial Caseload Profile):

|  | June 30 2017 | June 30 2018 | June 30 2019 | June 30 2020 | June 30 2021 | June 30 2022 |
|---|---|---|---|---|---|---|
| Civil Court Filings (Actions Per Judgeship) | 528 | 647 | 601 | 596 | 552 | 564 |
| Median Time (Months) [from Filing to Disposition] | 5.8 | 6.6 | 6.5 | 5.5 | 6.5 | 5 |
| Median Time (Months) [from Filing to Trial] | 30.3 | 24.8 | 29.4 | 31.3 | 30.8 | 39.1 |

**Table 2** - (Ohio Northern, US District Court – Judicial Caseload Profile):

|  | June 30 2017 | June 30 2018 | June 30 2019 | June 30 2020 | June 30 2021 | June 30 2022 |
|---|---|---|---|---|---|---|
| Civil Court Filings (Actions Per Judgeship) | 290 | 352 | 388 | 352 | 262 | 219 |
| Median Time (Months) [from Filing to Disposition] | 12.9 | 10.3 | 9.9 | 9.4 | 9.9 | 9.8 |
| Median Time (Months) [from Filing to Trial] | 26.7 | 21.4 | 18.6 | N/A | N/A | 36.2 |

**Table 3** - (Pennsylvania Western, US District Court – Judicial Caseload Profile):

13

|  | June 30 2017 | June 30 2018 | June 30 2019 | June 30 2020 | June 30 2021 | June 30 2022 |
|---|---|---|---|---|---|---|
| Civil Court Filings (Actions Per Judgeship) | 264 | 256 | 264 | 288 | 280 | 298 |
| Median Time (Months) [from Filing to Disposition] | 6.1 | 5.8 | 6.7 | 5.6 | 6 | 6.8 |
| Median Time (Months) [from Filing to Trial] | 31.5 | 32.6 | 32.6 | 31.9 | N/A | 42.9 |

Docket conditions thus favor the Western District of Pennsylvania as a more suitable location for transfer. *See In re Lending Tree, LLC, Customer Data Sec. Breach Litig.*, 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (transfer is appropriate where a district that has the capacity to handle a docket and, in the past, has been underutilized as a transferee district).

Moreover, in terms of geography, the Western District of Pennsylvania, specifically Pittsburgh, is perfectly situated as a central point between all the pending Related Actions in Ohio and Georgia (Pennsylvania borders Ohio and is in between Ohio and Georgia).  It follows then that the Western District of Pennsylvania is centrally located and easily accessible for all participants in the pending Related Actions.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs Karen Martin and Michael Martin respectfully request that their motion be granted and that the Panel transfer the Related Actions listed in the attached Schedule of Actions, as well as any future tag-along actions, to the Western District of

Pennsylvania before the Honorable Robert J. Colville, for consolidated or coordinated pretrial proceedings under 28 U.S.C. §1407.

Dated:  October 18, 2022                    Respectfully submitted,

                                            **SCOTT+SCOTT ATTORNEYS AT LAW LLP**


                                             _/s/ Joseph P. Guglielmo_
                                            Joseph P. Guglielmo
                                            The Helmsley Building
                                            230 Park Avenue, 17th Floor
                                            New York, NY 10169
                                            Telephone:  212-223-6444
                                            Facsimile:  212-223-6334
                                            jguglielmo@scott-scott.com

                                            _**Counsel for Plaintiffs Karen Martin and Michael Martin**_

15