**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| | : | |
| IN RE: KEY BANK DATA BREACH | : | |
| LITIGATION | : | **MDL NO. 3056** |
| | : | |
| | : | |

**PLAINTIFFS DANIEL BOZIN, JAMES MCNICHOL, JESSICA MCNICHOL,**
**KRISTI BURK AND PATRICIA BURK'S RESPONSE TO**
**PLAINTIFFS KAREN MARTIN AND MICHAEL MARTIN'S**
**MOTION FOR TRANSFER AND CENTRALIZATION UNDER 28 U.S.C. § 1407**
**WITH ALTERNATIVE TRANSFER VENUE REQUESTED**

Plaintiffs Daniel Bozin, as Executor of the Estate of Aurora Murgu, James McNichol, Jessica McNichol, Kristi Burk, and Patricia Burk, plaintiffs in *Daniel Bozin, et al. v. KeyBank, N.A., et al.*, Case No. 1:22-cv-01536 (N.D. Ohio) (the "Bozin Plaintiffs"), under Rule 3.2 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, submit this brief in support of Plaintiffs Karen Martin and Michael Martin's ("Movants") Motion for Transfer and Consolidation of Related Actions Pursuant to 28 U.S.C. § 1407 (the "Motion"). (Doc. 1).

While the Bozin Plaintiffs support consolidation and transfer of all pending actions ("Actions") noted in the Motion, and the one related action filed after the Movants' Motion was filed, the Bozin Plaintiffs respectfully request this Court to consolidate and transfer all matters to Judge Charles Esque Fleming in the United States District Court for the Northern District of Ohio.

**I.     LEGAL STANDARD**

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the

convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The party seeking transfer bears "a heavy burden to show that [the] common questions of fact are sufficiently complex, and that the accompanying discovery will be so time-consuming as to justify transfer under Section 1407." *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978).

## II.     ARGUMENT

### A.     The Cases Regarding the Data Breach Pending Across the Country Should Be Consolidated

Pursuant to 28 U.S.C. § 1407, "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). "Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 49 F. Supp. 3d 1350 (U.S. Jud. Pan. Mult. Lit. 2014).  In determining whether to consolidate cases from multiple districts to a single district, the Judicial Panel on Multidistrict Litigation (the "Panel") "applies a threshold set of criteria," including: (1) whether the "underlying issues present common questions of fact which are complex, numerous, and incapable of resolution through other available procedures such as informal coordination;" (2) whether the prudential and procedural factors support the necessity of centralization and (3) whether there exists a convenient and available transfer forum. *See* Manual for Complex Litigation, § 22.33, pp. 366-367 (4th ed. 2004).

Consolidation under section 1407 "should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d 1376, 1378 (U.S. Jud. Pan. Mult. Lit. 2011). These other options include "Section 1404

transfer; dismissal or stay under the first-to-file doctrine; agreement by plaintiffs to voluntarily dismiss their actions in favor of one district; and cooperation and coordination among the parties and the various transferor courts." See *In Re: Gerber Probiotic Products Marketing And Sales Practices Litigation,* MDL 2397, Order Denying Transfer (Oct. 16, 2012).

For the reasons discussed below, consolidation is appropriate as each of the related Actions are putative class actions seeking to certify overlapping classes of consumers whose PII was compromised in the KeyBank Data Breach. Each of the Actions are based on several common questions of fact and law. These common questions of fact and law establish a clear need to establish the kind of uniformity, consistency, and efficiency that consolidation brings. As noted by the Movants in their Motion, the Panel has previously granted similar Motions in similar multi-defendant data breach cases. See *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (ordering transfer, centralization, recognizing that "a single, multi-defendant MDL" is "necessary to ensure the just and efficient conduct of this litigation").

### 1.      The Factual Issues Are Numerous and Complex

Transfer and consolidation are appropriate where the "underlying issues present common questions of fact which are complex, numerous, and incapable of resolution through other available procedures such as informal coordination." *See* Manual for Complex Litigation, § 22.33, pp. 366-367 (4th ed. 2004). It is "inappropriate where Movant fails to demonstrate that the common questions of fact are sufficiently complex, or that the accompanying discovery will be so time consuming as to justify" transfer and consolidation. *In re The Boeing Company Employment Practices Litigation* (No. II), 293 F. Supp. 2d 1382, 1383 (U.S. Jud. Pan. Mult. Lit. 2003) (citing *In re Scotch Whiskey Antitrust Litigation*, 299 F. Supp. 543, 544 (U.S. Jud. Pan. Mult. Lit. 1969)).

The cases brought forth by all of the Plaintiffs proposed by the Movants for consolidation at this stage would appear to require judgment on complex or particularly numerous questions of fact. As the Movants' Motion demonstrates there are six questions common to the litigation which include (1) whether Defendants owed a duty to Plaintiffs and other similarly situated class members to protect their PII, (2) whether Defendants failed to provide reasonable security to protect the PII; (3) whether Defendants were negligent or otherwise improperly allowed PII to be accessed by third parties; (4) whether Defendants failed to adequately notify Plaintiffs and similarly situated class members that their data systems were breached; (5) whether Plaintiffs and similarly situated class members suffered legally cognizable damages as a result of the Data breach; and (6) whether the Plaintiffs and similarly situated class members are entitled to a declaratory judgment. *See* Mtn to Transfer at p. 9. (Doc. 1-1)

These six questions, while common to many data breach cases, are also uniquely complex, especially given the nature of the breach, each Defendant's investigation into the breach, and each Defendant's policies regarding the safeguarding of PII.  Should these matters not be consolidated there is no question that the Plaintiffs in each Action would engage in substantially duplicative discovery with reciprocal duplicative discovery being conducted by the Defendants into Plaintiffs' damages.  The Panel has routinely granted consolidation motions in similar breaches as pointed out by the Movants. See *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections."); *In re Uber Techs., Inc., Data Sec. Breach Litig.,* 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("Common factual questions are presented with respect

to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) ("Common factual questions are presented with respect to Yahoo's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages.").

### 2.    Coordination through Centralization Will Further the Convenience of the Parties

As noted above, centralization under section 1407 "should be the last solution after considered review of all other options." *In re Best Buy Co.,* 804 F. Supp. 2d at 1378. Other options available here include "Section 1404 transfer; dismissal or stay under the first-to-file doctrine; agreement by plaintiffs to voluntarily dismiss their actions in favor of one district; and cooperation and coordination among the parties and the various transferor courts." *Gerber Probiotic Products*, MDL 2397, Order Denying Transfer (Oct. 16, 2012). Voluntary cooperation is a preferable "[a]lternative to transfer...that may minimize whatever possibilities could arise of duplicative discovery." *In re Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384, 1384-85 (U.S. Jud. Pan. Mult. Lit. 2009). Where there are a limited number of parties and law firms involved, informal coordination between the involved attorneys and courts is "preferable to formal centralization." *In re: Adderall XR* (Amphetamine/Dextroamphetamine) Mktg., Sales Practices & Antitrust Litig., 968 F. Supp. 2d 1343, 1345 (U.S. Jud. Pan. Mult. Lit. 2013); see also *In re: Rite Aid Corp. Wage and Hour Empl. Pracs. Litig.,* 655 F. Supp. 2d 1376, 1377 (U.S. Jud. Pan. Mult. Lit. 2009) (denying request for an MDL and noting "[c]ooperation among counsel and the parties is particularly appropriate here, where plaintiffs in four of the six actions encompassed by the motion share counsel.").

Given the complex nature of this data breach, the Panel should not take into consideration the possibility of informal coordination. These matters are pending in three different District Courts and three different Court of Appeals jurisdictions. There is a likelihood of inconsistent rulings which would be a waste of judicial resources as well as time and expense to all parties. Transfer and coordination to a single federal district such as the Northern District of Ohio will mitigate any problems and enable a single judge to manage discovery and allow the parties to coordinate their efforts. This consolidation will substantially reduce litigation costs and benefit all litigants, third parties, and the Court. See *In re First Nat. Collection Bureau, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("[E]fficiencies can be gained from having these actions proceed in a single district," such as "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary.")

> **3.** **Consolidation Would Serve the Convenience of the Parties and the Court, Promote Judicial Efficiency, and Avoid Duplication of Resources**

The guiding principle of section 1407 is that centralization must be "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. Where there are a small number of actions, the movants bear a heavier burden to show that centralization is appropriate for the convenience of the parties or judicial efficiency. See *In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.,* 222 F. Supp. 3d 1339, 1340 (U.S. Jud. Pan. Mult. Lit. 2016).

The burdens of compelling centralization and consolidation are met here as discussed at length above as well as for the reasons articulated by the Movants in their Motion. There are common questions of fact and law that the appointment of a single MDL judge to coordinate

discovery, ruling on all motions, and conducting all trials is more than appropriate here.  See *Am. Med. Collection Agency, Inc.*, 410 F. Supp. 3d at 1353 ("[A] single MDL encompassing [multiple defendants] is necessary to ensure the just and efficient conduct of this litigation.").

**B.    In the Event the Panel Were to Grant Centralization, the Cases Should be Transferred to the Northern District of Ohio**

In the event the Panel were inclined to find coordination and centralization of these cases necessary, the Bozin Plaintiffs would respectfully request that these matters be transferred to the Northern District of Ohio.  In determining where the consolidated cases should be transferred, the Panel looks for "an available and convenient transfer forum, usually one that (1) is not overtaxed with other MDL cases, (2) has a related action pending on its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to the parties." See Manual for Complex Litigation, Fourth ("MCL, 4th") § 22.33 (footnotes omitted).

**1.    The Northern District of Ohio is not Overtaxed With Other MDL Cases**

The Northern District of Ohio is not overtaxed with other MDL cases. According to the Panel's most recent statistics, there are currently only three (3) MDL cases pending in the Northern District of Ohio. See Exhibit 1: MDL Statistics Report – Distribution of Pending MDL Dockets by       District       at       p.       5,       available       at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-14-2022.pdf (last visited October 20, 2022). Thus, the Northern District of Ohio does not have a disproportionate share of MDLs and can handle another MDL litigation.

**2.    Two of the Plaintiffs' Complaints, including the First-Filed Complaint by the Bozin Plaintiffs, are Pending in the Northern District of Ohio**

As referenced above, two of the seven actions involved in the Motion are pending in the Northern District of Ohio.  The Bozin Plaintiffs' Complaint, which is the first-filed complaint in

these matters, captioned *Daniel Bozin, et al. v. KeyBank, N.A., et al.*, Case No. 1:22-cv-01536, was filed in the United States District Court for the Northern District of Ohio.  The third-filed complaint in these matters, captioned *Melissa Urciuoli, et al. v. KeyBank, N.A., et al.,* Case No. 1:22-cv-01598, was also filed in the United States District Court for the Northern District of Ohio.  As there are at least two of the related actions pending there, including the first-filed case, the Northern District of Ohio is an appropriate venue for this MDL.

> ### 3.    Judge Fleming Has Capacity, and the Northern District of Ohio Has Experience Handling MDLs

The Bozin Plaintiffs' case is pending before Judge Charles Esque Fleming in the Northern District of Ohio.  Judge Fleming is recently appointed and has the capacity to take on the significant additional work of an MDL.

The Clerk of the Northern District of Ohio has extensive experience in handling MDLs, including the Opioid MDL which was one of the largest and most complex in history. Through September 20, 2021, the Northern District of Ohio has handled thirty-three (33) multidistrict litigations. *See* Exhibit 2 - Multidistrict Litigation Terminations through September 30, 2021 at pp.                        27-28                available                 at https://www.jpml.uscourts.gov/sites/jpml/files/JPML%20FY%202021%20Report%20Cumulativ e%20Terminated%20MDLs.pdf (last visited October 20, 2022).  In contrast the Western District of Pennsylvania has handled twenty-one (21) multidistrict litigations. *Id.* at pp. 18-19.

Lastly, the Sixth Circuit Court of Appeals, which encompasses the Northern District of Ohio, has greater experience handling data breach litigation. See *Galaria v. Nationwide Mutual Insurance Co.*, 663 Fed.Appx. 384, 385, 388 (6th Cir. 2016) (addressing standing in a data breach case).

### 4.      The Northern District of Ohio is Convenient to All Parties

The Northern District of Ohio is convenient to all parties. In surveying the seven complaints, at least five (5) of the Plaintiffs are residents of Ohio and one of the Defendants, KeyBank, N.A., is headquartered in and has substantially all of its operations in Cleveland, Ohio.

Judge Fleming is located at the Carl B. Stokes United States Courthouse in Cleveland, Ohio. Cleveland is a major U.S. city and is centrally located between both coasts in the United States. The Carl B. Stokes U.S. Courthouse is easily and quickly accessible from the Cleveland Hopkins International Airport. The Greater Cleveland Regional Transit Authority provides a quick and convenient train ride from the Cleveland Hopkins International Airport to the courthouse without ever having to step outside the airport. See https://www.riderta.com/routes/redline (last visited October 20, 2022). These factors all support the convenience of the Northern District of Ohio to the parties.

The fact that the other Defendants and other Plaintiffs are located outside of the Northern District of Ohio carries little, if any, weight under the circumstances of this nationwide data breach. Modern day technology allows document production in large-scale cases such as this to be produced and reviewed electronically, thereby making the location of the documents of little relevance to choosing a convenient forum. Moreover, this case will likely boil down to a battle of the experts concerning the deficiencies in the Defendants' cyber-security systems, controls, and safeguards. The experts can provide their expertise from wherever they reside and, thus, there is no benefit to the actions being transferred to the Western District of Pennsylvania.

### <u>CONCLUSION</u>

As the pending actions regarding the Key Bank Data Breach all share a common factual background, the actions should be consolidated in a single forum. Because the factors favor the

Northern District of Ohio, the actions should be transferred to the Northern District of Ohio to proceed before Judge Fleming.

Dated: November 4, 2022                    Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
DannLaw
15000 Madison Ave.
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536
notices@dannlaw.com