**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE: KEYBANK DATA BREACH
LITIGATION

**MDL NO. 3056**

**PLAINTIFF TIM MARLOWE'S RESPONSE IN OPPOSITION TO
PLAINTIFFS KAREN MARTIN AND MICHAEL MARTIN'S MOTION
FOR TRANSFER AND CENTRALIZATION IN THE WESTERN
DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1407**

Plaintiff Tim Marlowe ("Respondent"), the Plaintiff in *Marlowe v. Overby-Seawell Company, et al.*, Case No. 1:22-cv-03648 (N.D. Ga., filed Sep. 9, 2022), pursuant to 28 U.S.C. § 1407 and Panel Rule 6.1(c), through his undersigned counsel, hereby submits this Response in Opposition to Plaintiffs Karen Martin and Michael Martin's ("Movants") Motion to Transfer and Centralization In The Western District Of Pennsylvania Pursuant to 28 U.S.C. § 1407 (the "Motion") [ECF No. 1]. Respondent does not oppose centralization but opposes centralization in the Western District of Pennsylvania. Respondent, instead, proposes centralization in the Northern District of Georgia, the location of the central defendant's headquarters (where relevant witnesses and documentary evidence common to all the actions are likely to be found) and where five of the ten[1] Related Actions are currently pending.

---

[1] There are four additional cases related to the Breach not listed in Movant's Schedule of Related Actions: *Sheckard et al v. Overby-Seawell Company et al*, Case No. 1:2022-cv-03708 (N.D. Georgia, filed Sep. 14, 2022); *West v. Overby-Seawell Co. et al*, Case No. 1:2022-cv-03858 (N.D. Ga., filed Sep. 26, 2022); *Brouty et al v. KeyBank National Association et al*, Case No:

## I.    COMMON FACTUAL BACKGROUND

Contrary to Movant's assertion, the Related Actions do not arise from a data breach suffered by KeyBank[2]. The Related Actions arise from a data breach (the "Data Breach" or "Breach") suffered by Overby-Seawell Company ("OSC") and which occurred on OSC's network alone. The Breach, however, also affected a number of financial institutions (including Fulton Bank, N.A.[3], KeyBank[4], Renasant Bank[5], and numerous others[6]) whose data OSC stored as part of its business. However, none of OSC's financial institution customers' networks was implicated in the Breach. Accordingly, there is only one defendant common to all Actions: OSC. All plaintiffs in the Related Actions allege that OSC failed to properly protect their and class members' personally identifying information ("PII") resulting in harm to plaintiffs and class members ("Plaintiffs and Class Members"), who now face a present and continued risk of identity theft and fraud as a result of the Data Breach.[7]

---

1:2022-cv-01885 (N.D. Ohio, filed Oct. 19, 2022); *Pittman v. Keybank National Association et al*, Case No. 2:2022-cv-01513 (W.D. Penn., filed Oct. 26, 2022).

[2] KeyBank National Association and KeyCorp are referred to together as "KeyBank".

[3] *See, e.g., Sheckard et al v. Overby-Seawell Company et al*.

[4] *See, e.g., Urciuoli et al v. KeyBank National Association et al*.

[5] *See* Exhibit 1, Renasant Bank Data Breach Notice Letter.

[6] Movants agree that given the extent of the data breach (potentially affecting "millions of individuals") and extensive press coverage, it is likely that "additional class actions will soon commence." Motion at 3.

[7] Thus, it may be more appropriate to title the MDL, "*In re Overby-Seawell Company Data Breach Litigation*".

OSC is a financial services technology provider incorporated in Georgia with its principal place of business in Kennesaw, located in the Northen District of Georgia. OSC serves financial institutions worldwide.[8] According to its website, OSC "is a leading provider of compliance driven tracking technology and insurance products and services for lenders, mortgage servicers, and property investors."[9] As part of its business, OSC processes and stores PII obtained from its financial institution customers, that is, the PII of Plaintiffs and Class Members.

On July 21, 2022, OSC began notifying (the "Notice") its financial institution customers, governmental authorities, and Plaintiffs and Class Members that on July 5, 2022, an "unauthorized external party" had gained remote access to OSC's network and acquired certain information, including Plaintiffs' and Class Members' PII. In its Notice, OSC also made it clear that it alone discovered the Breach, led its investigation, and hired all third parties that helped determine the extent of the Breach.[10] Most importantly for purposes of this Motion, OSC determined that "[n]o systems or networks of [its] customers…, were impacted by this incident."[11] In other words, the facts of the Breach revolve almost entirely around OSC and its network; neither the networks of KeyBank nor that of any other financial institution was

---

[8] *See* https://www.bloomberg.com/profile/company/3670062Z:US (last visited Nov. 4, 2022).

[9] *See* https://www.oscis.com/who-we-are/ (last visited Nov. 4, 2022).

[10] *See* Exhibit 1 ("OSC immediately launched an investigation, with the assistance of third-party forensic specialists, to determine the nature and scope of the activity.").

[11] *Id.*

implicated in the Breach.[12] Presumably, that is why OSC took it upon itself to (1) offer "to mail letters to potentially impacted individuals on behalf of [its] customers"; (2) take remedial measures such as implementing "additional safeguards and training to its employees"; (3) and offered "access to credit monitoring services for twenty-four (24) months, through IDX, to individuals whose personal information was potentially affected by this incident."[13] It is apparent that this Breach revolves almost entirely around OSC and its network.

## II.   PROCEDURAL BACKGROUND

As of this filing, there are ten Related Actions pending in three different federal district courts. There are five Actions pending in the Northern District of Georgia, three Actions pending in the Northern District of Ohio, and two Actions pending in the Western District of Pennsylvania. Two of the Actions name Fulton Bank, N.A. as a Defendant. Eight of the Actions name KeyBank as a Defendant. All ten of the Actions name OSC as a Defendant as the Breach occurred on its network alone. No other defendant is named in all the Actions.

## III.   ARGUMENT

Given that there is a singular center of gravity, with OSC located and headquartered in Kennesaw Georgia, the Breach occurring solely on its network, and

---

[12] Respondent notes that each financial institutions' due diligence in selecting OSC as a provider will be an issue for the litigation.
[13] *Id*. at 1-2.

five of the ten Related Actions filed in the Northern District of Georgia, the most

logical and convenient location for centralization is the Northern District of Georgia.

### A. The Northern District of Georgia is the Center of Gravity of the Related Actions.

A center of gravity exists when there is a singular defendant who is common

to all actions, such that relevant witnesses and documentary evidence common to all

the actions are likely to be found there. *See, e.g.*, *In re Guidant Corp. Implantable*

*Defibrillators Prod. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005)

("geographically central, metropolitan district" "where at least ten actions are

already pending" and where  "key [Defendant's] facilities involved in the

development and manufacturing of the relevant devices" are located had a

significant "nexus" to the actions). A core principle behind centralization and choice

of forum is "the convenience of parties and witnesses" and the promotion of "the

just and efficient conduct of such actions." 28 U.S.C.A. § 1407(a). Accordingly,

where there is a center of gravity for related actions, courts choose the forum located

in that center of gravity because it will uniquely promote the aims of centralization.

*See, e.g.*, *In re: Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp.

2d 1379, 1382 (U.S. Jud. Pan. Mult. Lit. 2011) (transferring actions to district in

which defendant was headquartered, where "relevant documents and witnesses are

likely located…"); *See In re Union Pac. R.R. Co. Emp. Pracs. Litig.*, 314 F. Supp.

2d 1383, 1384 (J.P.M.L. 2004) (transferring to the District of Nebraska since

"documents and witnesses can be found at [defendant]'s Nebraska headquarters" and "the Nebraska district has the capacity to handle this litigation."); *In re Libr. Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968) (transferring to "center of gravity" where plurality of defendants resides and relevant documents are located). Further, the fact that numerous cases are already pending (and thus were willingly filed) in a district can demonstrate the centrality of that district. *See, e.g.*, *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) (transferring nationwide data breach action to Northern District of Georgia as defendant was "headquartered in that district" and "[f]ar more actions [were] pending in" that district); *In re Tri-State Crematory Lit.*, 206 F. Supp. 2d 1376 (J.P.M.L. 2017) (transferring to Northern District of Georgia where key facility was located and "two of three" related actions were pending); *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 229 F. Supp. 2d 1379, 1380 (U.S. Jud. Pan. Mult. Lit. 2002) (finding persuasive that "almost half of the constituent actions" were already pending in the transferee forum and that forum was an "accessible, metropolitan district").

Here, where there is one central defendant (*supra* Section I establishing that only OSC's network was impacted by the Breach and only OSC is named as a defendant in all the Actions) and "half of the constituent actions" have also been filed in that defendant's home district, centralization is most appropriate in said

district.[14] Respondent's counsel have been involved in almost all of the major data breach cases to date and have taken a considerable number of depositions of the employees of the defendants which were the subject of those data breaches. With few exceptions, the witnesses who were deposed in these cases were located and deposed in the districts where the defendants were located. To select another state for centralization of these Actions—whether Pennsylvania, Ohio, or some other forum—would increase unnecessarily the burden, cost, and expense of discovery. Therefore, Respondent proposes the Northern District of Georgia as the only logical forum for centralization.

### B. Docket Conditions Favor the Northern District of Georgia.

The median time from filing to disposition of cases in the potential transferee districts has previously been recognized by the Panel as an important criterion for consideration. *See, e.g.*, *In re National Student Marketing Litig*., 368 F. Supp. 1311, 1318 (J.P.M.L. 1972). Contrary to Movants' assertion (and the very statistics

---

[14] The authority Movants rely on to support their argument is inapposite and involves cases where there was no central defendant, no center of gravity, or the defendant's headquarters was in a less convenient forum. *See In re Diisocyanates Antitrust Litig*., 341 F. Supp. 3d 1376 (J.P.M.L. 2018) (antitrust litigation where defendants equally participated in price fixing scheme); *In re: Trib. Co. Fraudulent Conv. Litig*., 831 F. Supp. 2d 1371 (J.P.M.L. 2011) (fraudulent conveyance case seeking recovery of funds from 1,700 former shareholders); *In re: Anthem, Inc., Customer Data Sec. Breach Litig*., 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015) (choosing California where defendant has "significant ties," "is the largest for-profit health insurer and maintains several offices" over district where defendant is headquartered); *In re Sonic Corp. Customer Data Sec. Breach Litig*., 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017) (choosing alternate district over district where defendant was headquartered where defendant was headquartered in Oklahoma and "all responding plaintiffs" supported the alternate district, which the court found to be "a centrally-located and easily accessible location").

Movants provide), the median time from filing to disposition is more favorable in the Northern District of Georgia than in the Western District of Pennsylvania. The most recent statistics (June 30, 2022) demonstrate that the median number of months from filing to *disposition* for the Northern District of Georgia is 5 months and for the Western District of Pennsylvania, 6.8 months.[15] Similarly, the most recent statistics also demonstrate that the median number of months from filing to *trial* for the Northern District of Georgia is 39.1 months and for the Western District of Pennsylvania, 42.9 months.[16] Docket conditions thus favor the Northern District of Georgia as the most suitable choice for centralization. *See, e.g.*, *id.* (transferring actions to the District of Columbia as "the median time interval from issue to trial in civil cases was eighteen months in the District of Columbia but twenty-seven months in the Southern District of New York").[17]

This Panel also recognizes that the convenience of the forum is an important criterion for consideration and, accordingly, has found the Northern District of Georgia—an "accessible metropolitan court"—an appropriate forum for

---

[15] U.S. District Courts – National Judicial Caseload Profile (Combined Civil and Criminal Federal Court Management Statistics), United States Courts, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last viewed Nov. 4, 2022).

[16] *Id.*

[17] Movants also note that the total number of cases transferred by the Panel into the Northern District of Georgia is higher than in the other potential districts. Movants, however, fail to cite any authority or note any logic to support their assertion that a higher number of transfers (regardless of the number of judges and other judicial resources available in a district) demonstrates less favorable docket conditions and not the Panel's esteem for that district.

centralization. *See, e.g.*, *In re Paragard IUD Products Liability Litigation*, 510 F. Supp. 3d 1376 (J.P.M.L. 2020) (Northern District of Georgia was appropriate transferee forum where six constituent actions were pending and district was a "convenient, readily accessible forum"); *In re Gator Corp. Software Trademark & Copyright Litigation*, 259 F. Supp. 2d 1378 (J.P.M.L. 2003) (Transfer to Northern District of Georgia was appropriate where district provided "accessible metropolitan court" and possessed necessary resources and expertise). The Northern District of Georgia's  judicial expertise and resources  coupled with Atlanta's offering of a metropolitan city with a major international airport similarly make it the proper forum for centralization here.[18] Again, Respondent proposes the Northern District of Georgia as the only logical forum for centralization.

## IV.   CONCLUSION

Based on the foregoing, Respondent respectfully requests that the Panel centralize the Related Actions in the Northern District of Georgia.


Date: November 7, 2022                    Respectfully Submitted,

                                          */s/ John A. Yanchunis*
                                          John A. Yanchunis
                                          Ryan D. Maxey

---

[18] Defendant cites *In re Lending Tree, LLC, Customer Data Sec. Breach Litig.* for the proposition that the Panel should favor transferee districts which previously have been underutilized. 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008). Defendant, however, omits that the Panel first listed, as the basis for its decision, the fact that the key defendant was headquartered in the transferee district where the relevant "parties, witnesses and documents may be found". *Id.*

**MORGAN & MORGAN COMPLEX BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

Gregory Bosseler
**MORGAN & MORGAN, P.A**
191 Peachtree Street N.E., Suite 4200
P.O. Box 57007
Atlanta, Georgia 30343-1007
gbosseler@forthepeople.com

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
(513) 345-8291
jgoldenberg@gs-legal.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA   19106
(215) 592-1500
cschaffer@lfsblaw.com

*Attorneys for Plaintiff Marlowe and the Proposed Class*